**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Maikol D.G.L.,

Petitioner,

v.

Todd Blanche, *Acting Attorney General*; Markwayne Mullin, *Secretary, U.S. Department of Homeland Security*; David J. Venturella, *Acting Director of Immigration and Customs Enforcement*; and David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*,

Respondents.

Civ. No. 26-3505 (JWB/DLM)

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

---

Mackenzie R. Moy, Esq., Zelle LLP, counsel for Petitioner.

David W. Fuller, Esq., and David R. Hackworthy, Esq., United States Attorney's Office, counsel for Respondents.

---

This case presents two related questions: whether federal immigration officers acted within their statutory authority when they arrested Petitioner Maikol D.G.L. with a warrant, and, if not, whether 8 U.S.C. § 1225(b)(2) nevertheless supplies a lawful basis for his continued detention. The first question turns on whether the arresting officers complied with requirements for a warrant-based arrest of a noncitizen who lacks lawful status. The second requires consideration of the distinct functions Congress assigned to the statutes and the proper scope of habeas relief under § 2241.

Petitioner is a noncitizen who entered the United States without authorization in

2022 and was paroled into the country. Several years later, he was arrested and detained by Immigration and Customs Enforcement ("ICE") agents. At issue is whether his arrest was lawful.

The record establishes that Petitioner was arrested in violation of 8 C.F.R. § 236.1. Whether that violation requires release despite Respondents' reliance on § 1225(b)(2) is a separate question. For the reasons explained below, the provisions are best read to preserve their distinct functions: one governs the authority exercised to arrest Petitioner with a warrant, while the other governs detention following the examination and determination prescribed there. On that reading, Respondents may not continue the present custody initiated through an unauthorized arrest procedure.

## BACKGROUND

Petitioner is a citizen of Venezuela. (Doc. No. 1, Petition ¶ 11; Doc. No. 7 ¶ 4; Doc. No. 7-1 at 2; Doc. No. 7-2 at 1.) He entered the United States in 2022 and was paroled into the country by Border Patrol. (Doc. No. 7 ¶ 4; Doc. No. 7-1.) His parole expired in December 2022. (*Id.*) He filed an application for asylum in December 2022 and it remains pending. (Petition ¶ 12; Doc. No. 7-5 at 2.) He was granted temporary protected status ("TPS") from February 15, 2024 until April 2, 2025. (Doc. No. 7 ¶ 5; Doc. No. 7-5 at 2.) He filed again for TPS in September 2025, but TPS was terminated by the Department of Homeland Security, and his case was closed in November 2025. (Doc. No. 7 ¶ 6; Doc. No. 7-5 at 2.)

Petitioner lives in Faribault, Minnesota with his girlfriend. (Petition ¶¶ 6, 13.) He is a caretaker for his parents and two sisters who live nearby. (Petition ¶ 13.) He has a

valid work permit that is valid through January 9, 2029. (*Id.*; Doc. No. 7-5 at 2.) He owns a small cleaning company, and he supports his parents and two sisters economically. (Petition ¶ 13.) He has no criminal record. (*Id.*)

On July 29, 2026, at 8:45 a.m., Petitioner was arrested by ICE agents in St. Paul while he was at a routine immigration check-in appointment. (*Id.* ¶ 14; Doc. No. 7 ¶ 10; Doc. No. 7-5 at 2.) A records check showed that Petitioner's TPS had been revoked via an executive order in 2025. (Doc. No. 7-5 at 2.)

Petitioner alleges that no administrative warrant was served on him when ICE took him into custody. (Petition ¶ 51.)

Respondents' records indicate that they served Petitioner with an I-200 warrant on July 29, 2026, at Fort Snelling, Minnesota, and that the warrant's contents were read to Petitioner in Spanish; the document does not include a time. (Doc. No. 7-3.)

Petitioner was also issued a Form I-862 Notice to Appear ("NTA"), charging him as being present without admission or parole and lacking a valid entry document. (Doc. No. 7-2 at 1.) The NTA is dated July 29, 2026, and signed in two places, but it does not include a time. (*Id.* at 1, 4.) It also indicates that it was served on July 29, 2026, but the Certificate of Service does not include a time or location of service. (*Id.* at 3.) The NTA indicates that it was signed by the Issuing Officer at Fort Snelling and states that Petitioner is "currently residing" at Fort Snelling. (*Id.* at 1.)

An officer examined Petitioner on July 29, 2026, for purposes of filling out a Form I-213. (Doc. No. 7-5.) That document indicates 9:12 a.m. as the time of apprehension and it states that Petitioner was taken into custody at Fort Snelling and was issued a Warrant

of Arrest and a Notice to Appear. (*Id.* at 1–2.)

While at Fort Snelling that day, a Notice of Custody Determination was issued at 10:44 a.m., indicating that Petitioner would remain detained. (Doc. No. 7-4.) Petitioner was then transported to the Freeborn County Adult Detention Center, where he remains in custody. (Petition ¶ 6; Doc. No. 7 ¶ 11.)

## DISCUSSION

### I. Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner bears the burden of establishing, by a preponderance of the evidence, that the challenged detention lacks a lawful basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

Petitioner claims that Respondents exceeded or violated their arrest authority under 8 U.S.C. §§ 1226(a) and 1357(a)(2) which violated his Fourth Amendment rights, the Administrative Procedure Act, and the *Accardi* Doctrine. (Petition ¶¶ 50–64.) He also claims that his detention violates the Due Process Clause of the Fifth Amendment. (*Id.* ¶¶ 43–49.)

Petitioner challenges only the lawfulness of his present detention. He does not contest any removal order, the decision to initiate removal proceedings, or the execution of removal. Thus, jurisdiction lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition is not directed at removal, statutory channeling provisions do

not apply either. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

## II. Analysis

### A. Statutory Arrest Authority

Petitioner claims that Respondents failed to effectuate a lawful arrest under applicable immigration law. Every federal administrative agency, including ICE, "literally has no power to act—including under its regulations—unless and until Congress authorizes it to do so by statute." *FEC v. Cruz*, 596 U.S. 289, 301 (2022). That means any failure to abide by the governing statutes and regulations represents taking action without lawful authority to do so. Accordingly, Petitioner's claim asks whether Respondents acted under the authority conferred to them by Congress.

Federal statutes dictate when it is proper to arrest a noncitizen during the removal process. *See Arizona v. United States*, 567 U.S. 387, 407 (2012). The Immigration and Nationality Act provides two mechanisms for arresting a noncitizen prior to a final removal order. One is to arrest with a warrant under the authority in 8 U.S.C. § 1226(a); the other is to arrest without a warrant under more limited authority in 8 U.S.C. § 1357. *See id.* at 408.

Petitioner argues that his arrest was unlawful because no warrant or NTA had been issued when ICE took him into custody. He points to 8 C.F.R. § 236.1 and cases from this District for support. Petitioner also argues that the requirements for a warrantless arrest under 8 U.S.C. § 1357 were not met.

Respondents argue that Petitioner is lawfully detained under 8 U.S.C. § 1225(b)(2), citing *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). Respondents defend

the arrest as warrant-based, contending that an authorized officer issued the I-200 before the arrest and that the warrant was served at Fort Snelling. They further argue that even if the sequence of issuance is unclear, issuance of the NTA during same-day processing was sufficient. (Doc. No. 6 at 14–15.)

A valid Form I-200 authorizes the arrest of a noncitizen "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 236.1(b). The timing matters because an NTA initiates the removal proceeding for which the Form I-200 authorizes arrest. *Niz-Chavez v. Garland*, 593 U.S. 155, 163–64 (2021) (recognizing that an NTA "serves as the basis for commencing a grave legal proceeding"). Therefore, a lawful warrant-based arrest stems from the authority Congress granted in § 1226 (allowing arrest on a warrant) and Respondents' own rule in § 236.1 (authorizing arrest on an I-200 at or after issuance of a Notice to Appear).

Here, the record does not show that Petitioner's NTA was issued at or before the time that he was arrested on the I-200 warrant. The processing officer's report records the arrest (which took place at 8:45 a.m.) before describing issuance of the notice. (Doc. No. 7-5 at 2.) The report's immigration-history entry contains an apparent error in the year, but its account of the arrest and issuance of the documents is consistent with the encounter described elsewhere in the report. (*Id.*) No declaration from the issuing officer establishes when the NTA was issued. Robinson's declaration establishes only that it was served on the day of the arrest. (Doc. No. 7 ¶ 9.) There is no time stamp on the document showing when it was signed. The document is dated July 29, 2026, and states that

Petitioner was "currently residing" at Fort Snelling, Minnesota. (Doc. No. 7-2 at 1.) The location does not establish the sequence because Petitioner was arrested at Fort Snelling. Respondents were on notice from the Petition that the timing mattered: Petitioner specifically requested disclosure of the time the warrant was issued and any existing NTA on which the issuing officer relied. (Petition ¶ 78.) Respondents have access to the records and officers who could clarify the sequence but have not done so. Considering that omission together with the order of events described in the Form I-213, the record shows by a preponderance that the NTA was issued after Petitioner was arrested, in violation of the applicable regulation.

Respondents have not shown compliance with warrantless arrest requirements under § 1357 either. They have identified no reason to think Petitioner would escape before a warrant could be obtained.

ICE cannot retroactively legalize Petitioner's arrest and detention by generating a charging document after conducting a warrant-based arrest. Accepting such a post-hoc fix would effectively permit ICE to grant itself authority that it has not been given by existing statutes or regulations. The regulation prescribes a sequence, not merely a date by which both documents must issue. The same-day-processing authorities Respondents cite do not persuade otherwise. *Alan R.M. v. Blanche* addressed due process, not the sequencing requirement. And the regulation does not contain the same-day exception that *Ramirez v. Genalo* would permit. *See Jose V.P.R. v. Sheriff of Freeborn Cnty.*, Civ. No. 26-3047 (NEB/DLM), 2026 WL 2546265, at *2 (D. Minn. Aug. 28, 2026) (addressing both decisions and rejecting the same argument). Accordingly, Petitioner's warrant-based

arrest was unlawful.

### B. Remedy

The remaining question is the consequence of the unlawful arrest. Respondents contend that Petitioner is now properly subject to mandatory detention under § 1225(b)(2)(A). But as explained below, § 1225 supplies no arrest authority and cannot sustain the same uninterrupted custody that began through an unauthorized arrest.

#### 1. Release preserves the statutory text and structure

Under *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), a noncitizen in Petitioner's circumstances falls within § 1225(b)(2)(A) and, after the determination prescribed there, is subject to mandatory detention during removal proceedings. *Avila* did not decide the source or limits of the Government's authority to make a warrant-based arrest. Thus, accepting that § 1225(b)(2)(A) applies to Petitioner does not answer whether Respondents may continue custody obtained through an arrest that violated the law.

The Eighth Circuit has not squarely addressed this issue, and courts confronting related questions are divided. Some have denied release where another statutory basis for detention exists. *See, e.g.*, *Singh v. Sommer*, No. 7:26-cv-5013, 2026 WL 2042296, at *2–3 (D. Neb. July 15, 2026); *Cabrera v. Hidalgo*, No. 1:26-cv-1101 (LMB/LRV), 2026 WL 2002085, at *3 (E.D. Va. June 18, 2026); *A.P.A. v. Arteta*, No. 26-CV-3334 (AS), 2026 WL 1587452, at *3–4 (S.D.N.Y. June 3, 2026). Others have ordered release after finding that the Government lacked statutory authority for the arrest. *See, e.g.*, *Juan J.M.E. v. Easterwood*, Civ. No. 26-2270 (KMM/EMB), 2026 WL 1746672, at *2–3 (D. Minn. June 8, 2026), *R&R adopted*, 2026 WL 1747756 (D. Minn. June 17, 2026); *Alberto*

*Perdomo Rivera v. Mullin*, No. 5:26-cv-04197-KES, 2026 WL 2276935, at *3 & n.1 (C.D. Cal. Aug. 6, 2026).

Rules of statutory construction apply. The statutory text itself marks the analytical starting point. Related statutory provisions should be read so each retains operative effect. *See Corley v. United States*, 556 U.S. 303, 314 (2009); *Morton v. Mancari*, 417 U.S. 535, 551 (1974). Where a specific provision addresses the particular governmental authority at issue, it ordinarily governs over a more general provision that might otherwise be read to reach the same subject. *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976) (quoting *Morton*, 417 U.S. at 550–51).

Applying those principles to §§ 1226(a) and 1225 serves to harmonize their distinct but complementary purposes. Section 1226(a) and its implementing regulations specifically govern the authority exercised here—the power to arrest a noncitizen with a warrant—and they condition exercise of that authority on properly issuing a warrant and executing it and an NTA in the proper sequence. Section 1225(b)(2)(A), by contrast, addresses what follows after inspection of an applicant for admission: if an examining immigration officer determines that an applicant is "not clearly and beyond a doubt entitled to be admitted," the applicant "shall be detained" for a removal proceeding under § 1229a. That provision says nothing about warrant-based arrest authority.

Reading § 1225 to sustain Petitioner's current detention despite an unauthorized arrest would substantially diminish the legal and regulatory limits placed on warrant-based arrests. A warrant must be based on probable cause and generally permits an arrest only once an NTA is issued. Yet under Respondents' reading, ICE could arrest a

noncitizen and even wholly ignore those requirements, conduct the § 1225 inspection made possible by that arrest, and then continue the same custody because § 1225 requires detention. But ICE identifies no statutory authority permitting it to bypass the rules for making a warrant-based arrest.

The provisions can instead be given full effect according to the different subjects they address. Section 1226 governs whether ICE may take a noncitizen into custody in the interior with a warrant. Section 1225(b)(2)(A) addresses what follows after examination: if an examining immigration officer determines that an applicant for admission is "not clearly and beyond a doubt entitled to be admitted," the applicant "shall be detained" for removal proceedings. *Avila* requires enforcement of that detention command, but it does not hold that § 1225 supplies authority for the arrest that precedes it. Giving effect to specific limits on that arrest therefore does not diminish § 1225 or conflict with *Avila*; it gives effect to both provisions as written.

The question, then, is not whether § 1225 "cures" the defective arrest. It does not make the arrest lawful. The question is whether § 1225 independently authorizes continuation of the same custody even though the Government lacked statutory authority to initiate that custody through the arrest it chose to make. The statutory text provides no basis for treating the post-arrest detention directive as an independent authorization for custody obtained through an arrest subject to express limitations.

This conclusion does not treat Petitioner's current confinement as "poisonous fruit" or hold that every earlier wrongful arrest necessarily invalidates later custody. It rests on the narrower relationship between these provisions. Respondents used the

warrant-based arrest authority supplied by § 1226 to take Petitioner into custody, and § 1225 contains no independent grant of arrest authority.

Accordingly, § 1225(b)(2)(A) does not independently sustain Petitioner's present custody that began with an arrest unauthorized by § 1226(a) and its implementing regulations.

### 2. *Bilokumsky* and later proceedings

*United States ex rel. Bilokumsky v. Tod* states that if "sufficient ground" for a prisoner's detention is shown, the prisoner "is not to be discharged for defects in the original arrest or commitment." 263 U.S. 149, 158 (1923) (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 662 (1892)).

That principle cannot be given short shrift because of the case's age. The Supreme Court later cited the same page of *Bilokumsky* in *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1040 (1984), when explaining that an unlawful arrest does not itself invalidate a subsequent deportation proceeding.[1]

The *Bilokumsky* principle, however, does not resolve this case. *Bilokumsky* establishes that an unlawful original arrest does not invariably require habeas release when sufficient lawful grounds for detention subsequently exist. The unresolved question here is whether § 1225(b)(2)(A) supplies that "sufficient ground" where Petitioner

[1] In *Gerstein v. Pugh*, 420 U.S. 103, 113 (1975), the Supreme Court observed that it has "never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant." But *Gerstein* relates to criminal arrests, not administrative immigration arrests. And Respondents *did* secure a warrant here, but they executed it in violation of the governing requirements. As explained above, allowing the ensuing detention to cure that violation renders the arrest requirements meaningless.

remains in the same custody acquired through an interior warrant-based arrest for which § 1226 and § 236.1 specifically supplied—and limited—the Government's authority.

The statutory scheme here answers that narrower question. As explained above, the examination contemplated by § 1225 may determine whether detention is required, but it does not provide a separate basis for maintaining the same uninterrupted custody when the statutory authority required to initiate that custody was absent. Giving § 1225 that effect reads § 1226 and § 236.1's arrest requirements out of the scheme. That is why § 1225 is not the "sufficient ground" contemplated by *Bilokumsky* for Petitioner's custody.

Nor does release invalidate or alter Petitioner's removal proceeding. *Lopez-Mendoza* teaches that the legality of an arrest does not itself determine removability and that an unlawful arrest does not necessarily invalidate the ensuing immigration proceeding. 468 U.S. at 1039–40. Petitioner does not ask to terminate the removal case, suppress evidence in it, or otherwise alter the merits of the removability inquiry. That proceeding may continue notwithstanding the relief ordered here. *See* 8 C.F.R. § 1003.19(d) (recognizing that custody determinations are "separate and apart from, and shall form no part of" a removal proceeding).

The distinction is therefore between the Government's authority to pursue removal and its authority to maintain Petitioner's present physical custody. The former is unaffected. The latter depends on the statutes governing arrest and detention, read together according to their distinct functions. Because the arrest through which Respondents acquired custody was not authorized, and § 1225 does not independently

authorize continuation of that custody, Petitioner is entitled to release.

### 3. Conclusion

The appropriate habeas remedy is release from the present custody. *See* 28 U.S.C. §§ 2241(c)(3), 2243; *Munaf v. Geren*, 553 U.S. 674, 693 (2008). That relief is narrow. It terminates the detention initiated through an unauthorized arrest under the provisions specifically enacted to govern the seizure at issue. It does not invalidate § 1225, terminate the removal proceedings, or preclude Respondents from later arresting or detaining Petitioner pursuant to lawful authority and in compliance with applicable statutory and regulatory requirements. Respondents alternatively request a bond hearing. (Doc. No. 6 at 1.) But a bond hearing would address whether detention is warranted, not remedy the lack of authority to maintain the custody at issue here.

However, an additional restriction on re-detaining Petitioner is also warranted. Respondents maintain that § 1225(b)(2)(A) requires Petitioner's detention and that an Immigration Judge lacks authority to grant him bond. That position matters here because ICE has re-arrested successful habeas petitioners in this District as they were being released, in one instance within a minute. *Juan Y.P.M. v. Mullin*, Civ. No. 26-4662 (JRT/LIB), 2026 WL 3521183, at *3 & n.4 (D. Minn. Nov. 16, 2026). If that happens here, Petitioner will lose his liberty again before counsel can test whether ICE has corrected the defect in the July 29 arrest. A later ruling cannot restore that time. The restriction below is limited to renewed reliance on the warrant or arrest held unlawful here; it does not require advance approval of an independently lawful arrest.

Accordingly, the Petition for Writ of Habeas Corpus is granted in part, and

Respondents are ordered to immediately release Petitioner, subject to the provisions below. Petitioner's other habeas claims are not reached, and this Order expresses no position on their merits.

**ORDER**

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1. Petitioner Maikol D.G.L.'s Petition for Writ of Habeas Corpus (Doc. No. 1) is **GRANTED IN PART**.

2. Respondents must arrange for Petitioner's immediate release from custody. Respondents must provide Petitioner's counsel at least one-hour advance notice of the release time and location.

3. When Petitioner is released:

    a. **Release and Return of Property.** When Respondents release Petitioner, he must be released in Minnesota. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in Respondents' custody or control, including but not limited to, passports, identity papers or licenses, immigration records, prescribed medications, and treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property. Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

    b. **Return to Minnesota.** If Petitioner is currently held outside Minnesota, Respondents shall initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiating Petitioner's return based on administrative convenience, transportation availability, or detention-capacity considerations.

    c. **Weather-Related Delay.** If weather conditions present a safety risk at the time of release, Respondents may delay physical release only for the brief period necessary to ensure safe release. Any such delay must be

strictly limited and may not be used to justify continued custody where a safe alternative is available.

d. **No Recharacterization of Custody.** Respondents shall release Petitioner without conditions. They may not require him to sign a release instrument or impose or reimpose conditions of supervision in carrying out this Order.

4. **Notice.** Within **48 hours** of entry of this Order, Respondents shall file a status update confirming the time, date, and location of Petitioner's release.

5. Petitioner's present detention is unlawful because the NTA was issued after his arrest. Before re-detaining Petitioner in the pending removal proceedings in reliance on the July 29, 2026 warrant or the arrest held unlawful here, Respondents must first obtain leave in this case. The motion must be served on Petitioner's counsel, identify the authority and facts supporting the proposed arrest, and explain how Respondents have corrected the defect identified in this Order. Respondents may request expedited consideration.

6. Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: November 25, 2026
Time: 8:45 a.m.

*s/ Jerry W. Blackwell*
JERRY W. BLACKWELL
United States District Judge